# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JANET L. KEEN, )
                                      )
        Plaintiff, )
                                      )
v. ) Case No. CIV-15-299-RAW-KEW
                                      )
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
                                      )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Janet L. Keen (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 14, 1961 and was 53 years old at the time of the ALJ's decision. Claimant obtained a college degree in accounting. Claimant has worked in the past as a church secretary and office manager for a utility company. Claimant alleges an

inability to work beginning April 1, 2009 due to limitations resulting from stress, depression, anxiety attacks, COPD, cyclic vomiting syndrome, migraine headaches, and allergies.

**Procedural History**

On August 21, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge ("ALJ") Doug Gabbard, II on April 15, 2014 by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. The ALJ issued an unfavorable decision on July 11, 2014. On July 22, 2015, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. He also determined at step five that Claimant was able to perform medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination; and (2) finding Claimant could perform her past relevant work at step four.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairment of COPD. (Tr. 15). He concluded that Claimant retained the RFC to perform medium work except that Claimant must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, humidity, wetness, temperature extremes, and other pulmonary irritants. (Tr. 18). After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant job as a bookkeeper and an office manager/secretary. (Tr. 21). Based upon these findings, the ALJ concluded Claimant was not disabled from April 1, 2009 through the date of the decision. (Tr. 22).

Claimant contends the ALJ overstated her abilities and should have obtained consultative examinations or opinions from treating physicians in medical source statements on Claimant's pulmonary condition. The medical evidence cited by the ALJ demonstrated Claimant had been diagnosed with COPD and was prescribed an albuterol inhaler. X-rays, however, revealed no acute

5

cardiopulmonary disease process with no significant change in January of 2012. Pulmonary tests in July of 2013 were normal. Treatment notes indicated Claimant was relaxed and breathed without effort. Claimant's lungs were clear to auscultation and percussion with no crackles, wheezes, rhonchi, stridor, or pleural rubs. Claimant had not reported to the hospital or emergency room for her COPD except one time many years ago. (Tr. 20).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health &

6

Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record.

Claimant also suggests that the treating physicians should have been directed to submit medical source statements. Moreover, the regulations generally require that the adjudicators request medical source statements from acceptable medical sources with their reports. Soc. Sec. R. 96-5p. However, nothing in the regulations require the reversal and remand of a case because such statements were not obtained. Indeed, the regulations expressly state that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 404.1519n(c)(6). Therefore, the failure of the ALJ to obtain a statement from any treating physician does not constitute reversible error. Robison v. Colvin, 2013 WL 5450261, 2-3 (E.D. Okla.).

Claimant asserts the ALJ should have considered her cyclic vomiting syndrome a severe impairment. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional

impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The ALJ reasoned that Claimant had suffered from this condition

9

since childhood. The treatment records indicate Claimant worked and held jobs with this condition. (Tr. 15). He concluded the condition was not severe on this basis. Id. This reasoning is sound and the ALJ did not err in not finding this condition to be a severe impairment.

Claimant next asserts the Appeals Council failed to remand the case when presented by a medical source statement from her treating physician, Dr. Mark Rogow. Dr. Rogow authored a statement dated April 18, 2014 which indicated Claimant could sit at one time for 40 minutes, stand for 20 minutes, and walk for ten minutes. For an eight hour workday, Claimant could sit for three hours, stand for one hour, and walk for 30 minutes. She needed rest breaks at hourly intervals or less and needed to alternate between sitting and standing at 30 minute intervals. Claimant was found to be able to occasionally lift/ carry up to ten pounds and rarely lift up to 20 pounds. (Tr. 452-53). Claimant was limited in her lower extremities bilaterally. She could occasionally push/pull, work in extended position, work above shoulder level, work overhead, and reach. She could also occasionally grasp and finger/fine manipulate. Dr. Rogow found Claimant could rarely bend and squat and never crawl and stoop. (Tr. 453). She could also occasionally crouch, kneel, balance, climb stairs and ramps but never climb

10

ladders and scaffolds. Claimant was markedly restricted in being near unprotected heights, handling vibrating tools, exposure to extremes and sudden or frequent changes in temperature and/or humidity, and exposure to high noise levels. She should completely avoid dangerous moving machinery. (Tr. 454).

In a narrative statement, Dr. Rogow set out that the objective basis for the limitations he found was "tender back, knees, R hip with [decreased] range of motion, consistent with rheumatoid arthritis." Id. This finding is curious, as Defendant points out, since the record is devoid of other references to this condition.

Nevertheless, the Appeals Council included this late filed statement in the record but found Claimant was not entitled to review. (Tr. 1-5). The regulations permit the submission of evidence to the Appeals Council if it is new, material, and related to the period on or before the date of the ALJ's decision. Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004). It is assumed that the evidence meets the criteria if the Appeals Council accepts the evidence. Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011). If the new evidence relates to the relevant period, the ALJ must be given an opportunity to consider it. Id. at 1329. Since Dr. Rogow specifically stated the limitations set forth in her report related back to 2012, this case must be remanded for

11

consideration of the report's content.

As a part of this ongoing litany of issues under a challenge to the ALJ's findings on the RFC, Claimant contends her mental impairments impose limitations on her functioning. The ALJ discussed the four functional areas for evaluation of a mental impairment and found only mild limitations. (Tr. 16-18). Claimant has not directed this Court to medical evidence to support a further restriction other than Claimant's testimony. Indeed, Claimant's treating physician, Dr. Jennifer Scoufos found Claimant suffered from no more than a minimal limitation from her mental condition. (Tr. 333). As for a duty for the ALJ to order a consultative mental evaluation, as this Court has previously stated, the ALJ had not such duty in this instance.

Claimant also challenges the ALJ's credibility determination. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location,

duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's assessment of Claimant's credibility is well-supported by the medical record and Claimant's testimony. The ALJ cited to the discrepancies in her alleged limitations, her activities, and her treatment record. (Tr. 19-21). This Court finds no error in the credibility analysis.

**Step Four Analysis**

Claimant asserts the ALJ failed to make the required findings to ascertain if she could perform her past relevant work. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has already determined that a re-evaluation of the RFC findings must occur after the ALJ has an opportunity to consider Dr. Rogow's source statement.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The expert testified that Claimant's bookkeeper job was sedentary, SVP-6, skilled under the *Dictionary of Occupational Titles ("DOT")* and her office manager job was sedentary according to the *DOT* but light as performed, SVP-7, skilled. He testified someone with Claimant's limitations could perform both jobs. (Tr. 45-46). This testimony was sufficient to ascertain the administrative job identified in the *DOT*. However, at no point did the ALJ inquire of the expert as to the particular skills required in Claimant's past relevant work. On remand, the ALJ shall specifically explore the demands of the

work last performed by Claimant.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. Since the RFC and assessment of Claimant's past relevant work must be performed, this Court cannot conclude that the third phase has been satisfied. On remand, the ALJ shall re-evaluate his findings under Winfrey after reassessing his RFC evaluation.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE